W. E. Cooper, special J.,
delivered the opinion of the Court.
The original bill in this case was filed on the 5th day of February, 1848, by Samuel Ingram and others, the children of Polly Ingram, against Alfred McClain, Joseph Smith, J. M. Smith, and Henry F. Smith, to attach certain slaves in the possession of the defendants, and to have the complainants’ rights therein declared and protected. The bill states that the complainants claim under the will of Samuel Deloach, of Johnston county, in the State of North Carolina, bearing date the 29th day of October, 1805, and duly proved and admitted to record in the Probate Court of said county after his death. That complainants have a duly certified copy of said will in Arkansas, where they reside, and will file the same as soon as it can be done in this cause. That the testator, by his said will, bequeaths two negroes, Daniel and Hasty, to his daughter Lucretia or Tracy Spicer, for life, and, after her death and that of her husband, Wm. Spicer, to be equally divided between the heirs of the testator’s daughter, Polly Ingram, and of his son, Jesse Deloach. The bill further alleges, that Wm. Spicer and his wife Tracy are still living. That some years before Wm. Spicer had sold the negro woman Hasty to George Smith, who purchased with a *414 knowledge of complainants’ rights; that George Smith had since died; that the defendant, Henry E. Smith, had Hasty and several of her descendants in his possession ; that defendant, Joseph Smith, had Emeline, a daughter of Hasty, in his possession; that Jas. M. Smith had Lewis, a son of Hasty, in his possession; and that Alfred McClain, had Judy, another daughter of Hasty, and several children of Judy, in his possession. The bill prays that the negroes be attached, that defendants be enjoined from removing or disposing of them, that complainants’ rights in remainder be declared, &e.
The defendants, McClain and Henry E. Smith, file separate answers, in which each admits that he has seen ■ a paper purporting to be a copy from the records of the County Court of Johnston county, North Carolina, of the last will and testament of Samuel Deloach, deceased, bearing date the 29th of October, 1806, and containing a clause, quoted in the answers, which is identical with the clause of the will under which complainants claim, ■ as hereinafter given, except that the name of Hester is applied to one of the negroes instead of Hasty. Both answers further admit that the said copy pui-ports to be duly certified by the clerk of the County Court of Johnston county, North Carolina, and that the defendants “ suppose the will was duly proven and admitted to record.” The answers further admit that George Smith purchased from Wm. Spicer, about the year 1820, the woman Hasty, and perhaps two children. That George Smith died about 1833, and Hasty and her increase were divided among his distributees. Alfred McClain admits that he is in possession of Judy, a daughter of Hasty, and her children, having purchased *415 them from his co-defendant, James M. Smith, to whom they had been allotted in the distribution of George Smith’s estate. Henry E. Smith admits that he is in possession of Hasty and nine of her children. Hasty and three of her children he bought from Ross Webb, the husband of his sister Martha Smith, to whom they had been allotted in the division of George Smith’s estate. One of Hasty’s children he bought from Samuel Smith, his brother, to whom he was allotted. The other children were born after he bought Hasty. Both of these defendants insist that Wm. Spicer acquired a title to the negroes Daniel and Hasty, by gift from Samuel Deloach, of Jenny, the mother of said Daniel and Hasty, or by virtue of the statute of limitations, operating on the possession of said Jenny before the will of 1805 was made, and that, consequently, no right to such slaves passed under the will. Both defendants also deny that George Smith purchased with knowledge of complainants’ claims — Henry F. Smith stating that he was present when his father made the trade. Both defendants also insist that all necessary parties are not before the Court. That the heirs of Jesse Deloach should be made parties. And for the omission to do so, they claim the same benefit as if the objection had been made by demurrer.
The defendant, James M. Smith, files an answer denying that he has them, or ever has had the slave Lewis in his possession; and no further proceedings are had against him. No proceedings seem to have been taken at all against Joseph Smith. But on the 27th day of April, 1849, the complainants file an amended bill against Wm. H. Evans, charging that he has Em- *416 eline, a daughter of Hasty, in his possession. Evans answers, and admits that he claims the negro Emeline, in right of his wife, who acquired her as one of the children of James Williamson, deceased, who acquired his claim in right of his wife, as one of the children and distributees of George Smith, deceased, and in the division of the negroes belonging to that estate. The answer further admits, that “since the filing of the bill respondent has understood that said Emeline is a daughter of a woman named Hasty, who belonged, or was claimed to belong, to the estate of the late George Smith, deceased.” He denies all personal knowledge of other matters alleged in the bill, but refers to and adopts the answers of McClain and Henry E. Smith.
On the 1st of March, 1852, upon an order of the Court to that effect, the complainants file an amended and supplemental bill “ against the children and heirs of Jesse Deloach, to wit, Samuel Deloach, John Deloach, Wm. Deloach, and C. Deloach, of Adams county, Mississippi.” The bill adds: “ There may be other children of said Jesse, whose names and particular residences are unknown to complainants; but the above named are all complainants can get any certain knowledge of.” The bill prays the Court “ to cause the children and heirs of the said Jesse Deloach to be made defendants; that publication be made as provided by the rules of this Court in case of non-resident defendants, and that the relief sought in the original bill be granted.” At the April Rules, 1853, a fro eonfesso order was taken in the master’s office, “as to the defendants, heirs of Jesse Deloach,” reciting that publication had been regularly made as to them.
*417 On tbe 18th of June, 1856, the complainants file another amended and supplemental bill against Henry Smith, George K. Robertson, administrator of Alfred McClain, deceased, and Wm. H. Evans, in which they allege the filing of the original bill, and of the amended bill “for the purpose of bringing before the Court the children and heirs of Jesse Deloach, who are interested in the remainder in said slaves;” and add: “This amended bill not having been answered, has been regularly taken for confessed.” The bill proceeds to state-that Wm. Spicer and wife have recently departed this, life, and that complainants are now entitled to the-negroes in dispute, and prays that the parties above-named be made defendants, and required to answer. Each of these defendants does answer, admitting the filing of the original and amended bills as stated, and for the purposes alleged, admitting the death of Spicer and wife, and referring to and relying on the former-answers.
Proof was taken on both sides, and the cause was. finally heard by Chancellor Ridley, at the January Term,. 1858, of the Chancery Court at Lebanon, who gave a decree in favor of complainants, and ordered the defendants, Smith, Robertson administrator, and Evans, to. deliver the negroes in their respective possession to the-clerk and master of the Court, and directed an account to be taken of the hire since the death of Spicer and wife; from which decree the defendants Smith, Robertson administrator, and Evans prayed and obtained an appeal to this Court.
The complainants claim under the will of Samuel. Deloach. The will, as has been stated, was not before- *418 the draftsmen of the bill when drawn; but the complainants undertake to file a certified copy as soon as it can be done. The transcript of the record before us contains a copy of said will immediately following the original bill, and marked as exhibit, A, thereto. This copy is duly certified by the clerk of the Court of Pleas and Quarter Sessions of Johnston county, North Carolina, purporting to be “ under his hand and seal of office,” although no scroll or seal appears in the transcript. The authentication of the clerk is accompanied by the certificate of the chairman of the Court of Pleas and Quarter Sessions, to the official character of the clerk, and the faith and credit due to his official acts; and this, again, is followed by the certificate of the clerk to the official character, &o., of the chairman. These certificates bear date the 7th and 8th of May, 1848. At the hearing of the cause before the Chancellor, the defendants objected to the reading of the copy of the will in question, “because not authenticated according to law,” and “because the said paper had not been filed in Court according to law.” The Chancellor overruled the objections, and permitted the copy to be read, and the defendants tendered their bill of exceptions, which was signed accordingly. The objections are manifestly too general, and cannot avail the defendants under the rulings of this Court. It has been repeatedly held, that the objections made to .. the reading of evidence and exhibits in the Court below must be clear and specific; and this, for the obvious reason that the opposite party may have the opportunity of curing the defect if it be one, and not be taken by surprise when that opportunity can no longer be had. It is now urged that the certificate of *419 tbe clerk is insufficient for want of a seal, and that the exhibit was filed during the term at which the cause was heard, without the one day’s notice required by the 19th Chancery Rule. It does not appear from the bill of exceptions that either of these exceptions was made, or could have been made, in the Court below. Neither objection can now avail without showing, by bill of exceptions, that it was distinctly taken in the Court below; and the absence of the seal in the transcript must be considered as a mere clerical omission. Moreover, under the pleadings and proof, the defendants would not be benefitted by the exclusion of the copy of the will objected to. The answers, as we have seen, admit the existence of the will of Samuel Deloach, “ duly proved and admitted to record,” and that it contains a clause identical with that upon which the complainants rely, except that one of the negroes therein mentioned is designated by the name of Hester instead of Hasty. The proof is conclusive that the testator had no such slave as Hester, and that the negroes devised to his daughter Tracy were the two children of Jenny, as to whose names there is no discrepancy in the testimony. The defendants themselves admit that Hasty was the daughter of Jenny, and insist that Wm. Spicer, under whom they claim, had a good title to Hasty, by virtue of a gift to him of Jenny, by Samuel Deloach. We have no doubt, therefore, that these preliminary objections are merely formal, and do not affect the merits of the controversy.
The clause in Samuel Deloach’s will upon which the complainants rely, is as follows:
“ I give and bequeath to my daughter Tracy Spicer, *420 during her natural life, two negroes, Daniel and Hasty, which negroes, after her death, and the death of her husband, I gire to be equally divided between the heirs of my son Jesse and daughter, Polly Ingram.”
The first objection made to the complainants’ claim under this clause, is, that Daniel and Hasty were the children of a negro slave named Jenny. That Jenny had been given to Wm. Spicer and wife many years before the making of this will; that Spicer had acquired a title to Jenny, and had actually sold her before the will was made; and that the testator had, in fact, no right to Jenny’s children when he thus undertook to bequeath them.
On the other hand, it is insisted that Jenny was not given, but only loaned to his daughter by the sqid Samuel Deloach, and that no length of possession by the husband and wife, under the laws of North Carolina, would turn the loan into a gift. That the sale of Jenny was with the assent of the testator, and that the testator did actually own Daniel and Hasty at his death. These occurrences having all taken place in the State of North Carolina, among parties then living in that State, the rights of the parties must depend upon the local law applied to the facts as developed in the record. The questions of law involved have been repeatedly passed upon by the Courts of North Carolina, and are not, in reality, seriously controverted.
“It has long been settled,” says Henderson, J., in Collier v. Poe, 1 Dev. Eq., 56, “by the decisions- of our Courts, that if a parent puts property into the possession of a child who has- left, or is about to- leave the parent, such property is presumed to be given, and *421 not loaned to the child, and, therefore, purchasers and creditors have subjected it to their claims, whatever may have been the private understanding of the parties. But this is a presumption of fact and not of law. Clearly, therefore, between the parties, and all others who can not impute either legal or actual fraud to the transaction, the true character of the act may be shown.” It was also held in that ea.se, that if the loan was established as a matter of fact, the statute of limitations would not operate upon the husband’s possession, although he had sold some of the negroes as his own, and notwithstanding his declarations that he held for himself. He could not, by his own act, throw off his character of bailee. These principles have been repeatedly laid down by the Court of last resort in North Carolina, upon parol bailments of slaves, prior to their act of 1806. Mitchell v. Cleves, 2 Hay., 126; Dameron v. Clay, 2 Dev. Eq., 17 ; Hill v. Hughes, 1 Dev. & Bat. L., 336 ; Green v. Harris, 3 Ire. L., 210. Accordingly, a continuous possession by the husband of twenty years in Collier v. Poe, and of over forty years in Gfreen v. Harris, was held insufficient to vest title in him, although, in each case the husband publicly claimed the negroes, and disposed of some of them. An actual demand by the bailor, and a refusal by the bailee, was considered necessary to establish an adverse holding upon which the statute of limitations could operate.
With these principles before us, there can be little difficulty in settling the rights of the parties upon the facts of this case. It is .shown that Wm. Spicer intermarried with Tracy Deloach, then only fourteen years of age, about the year 1790, against the wishes of the *422 father, Samuel Deloach, and by a clandestine marriage. Spicer and wife resided, after the marriage, in the same county with Samuel Deloach, and a few miles distant. Deloach seems never to have had any friendly feelings for his son-in-law, who was inclined to be dissipated and improvident. But not long after the marriage, the negro Jenny, then a small girl, was delivered into the possession of Tracy Spicer by her father, and carried home by her. Jenny remained in the possession of Spicer and wife until she had three children, Daniel, Hasty, and Sarah. Some eight or nine years after the marriage, Deloach moved to Johnston county, some eighty miles from his former residence. In 1804, Wm. Spicer sold Jenny and her youngest child, Sarah, to one Bryant, and purchased a small tract of land with the proceeds. After Deloach’s removal to Johnston county, it appears from the testimony of at least one witness on behalf of the complainants, and one on behalf of the defendants, that Daniel and Hasty were, for a short time, in the possession of Samuel Deloach, and were again brought back by Mrs. Spicer. The will was made on the 29th of October, 1805; shortly after which the testator died. About the year 1810, Spicer and wife removed to Wilson county in this State, where they continued to reside up to their death. They brought with them Daniel and Hasty, and retained them and Hasty’s increase until the sale of Hasty and her children to George Smith, about 1820, and of Daniel to one McGregor, about 1827.
There is no proof as to the circumstances of the delivery of Jenny to Tracy Spicer by her father, except the testimony of Tracy Spicer herself and her hus *423 band, Wm. Spicer. Their depositions were taken in behalf of the defendants,' and are excepted to by the complainants upon the ground of the incompetency of these witnesses to testify. It is conceded by the defendants’ counsel, that these witnesses would be incompetent under the decisions of this Court (Burke v. Clarke, 2 Swan, 310) without a release; but it is insisted that sufficient releases have been executed, and they refer to the releases of Henry F. Smith, A. McClain, and Ross Webb, exhibited in the transcript. It is very obvious, however, from the recital of facts already given, that these releases are not sufficient. There is no release from the defendant, Wm. H. Evans, who has one of the slaves in his possession, nor from some of the distributees of the estate of G-eorge Smith, deceased, who received Hasty and some of her children as such dis-tributees; nor from the personal representative of George Smith. If it were necessary, therefore, we should be compelled to hold that the witnesses were not competent, and to exclude their testimony.
In truth, however, upon a careful examination of the depositions of these witnesses, we are satisfied that they make out a case in favor of the complainants, and render that clear, which, in the absence of their evidence, would be somewhat doubtful.
Both of these witnesses state roundly, upon their examination in chief, that the negro, Jenny, was given to them by Samuel Deloach, shortly after the marriage, and that they continued ever afterwards to claim them as their own. But both witnesses, upon cross-examination, state facts which demonstrate the incorrectness of their previous mere conclusion. Wm. Spicer *424 states distinctly that he was not present when the negro, Jenny, was delivered to his wife, and that he never had any conversation with Deloach about the girl Jenny, either before or after such delivery. He further admits, that when he sold Jenny to Bryant, he gave him a bill of sale; but Bryant having heard that there would be a dispute about it, he went to see old man Deloach, who signed the hill of sale. Mrs. Spicer testifies that when her father delivered Jenny to her, “he told me to take the girl, go along home with her, and make her wait upon me.” This is the only proof of a gift in the entire record; and it is hardly necessary to say that such language would not constitute an absolute gift of the title of a slave under any system of laws, and certainly not under the North Carolina decisions. Nor is there any evidence to show acts of ownership, on the part of Wm. Spicer, with the knowledge of Deloach, inconsistent with the title of the latter, except the sale of Jenny and her youngest child Sarah, to which he gave his express assent, doubtless for the reason that the proceeds were to be invested in a tract of land, as a home for his daughter. The discrepancies in the testimony of Spicer and wife, and the positive proof of numerous witnesses contradicting them in material points, satisfy us that little weight can he given to their statements. But, upon the point as to whether the slave Jenny was given or loaned, we have no hesitation in saying that the facts deposed to by them constitute only a loan, and that they state no other facts inconsistent with a continuation of the relation of bailor and bailee up to the death of Samuel Deloach.
Excluding the depositions of Spicer and wife, the *425 evidence is entirely satisfactory that the negro Jenny was received and held as a loan. At least one witness on each side establish the fact that the possession of the negroes was resumed by Samuel Deloach shortly before his death, doubtless for the purpose of establishing his ownership. The evidence is conclusive that, after the removal to Tennessee, Spicer and wife repeatedly and almost invariably, when the subject was mentioned in their presence, admitted that they had only a life estate. It is in proof by one witness that he read over to them Deloach’s' will, including the clause upon which the complainants’ rights depend, and they did not deny its validity. It is, also, very conclusively shown that the fact was generally known in Wilson county that they had only a life interest, and that George Smith, who was a constable in the county, was aware of the fact at the time of his purchase. In fact it was admitted by counsel that the defendants could not protect themselves under the plea of a bona fide purchaser for value and without notice, even if this were a case for the application of the principles. Upon the whole, we are very clear that the title to Daniel and Hasty was in Samuel Deloach at his death, and, consequently, that the legatees in remainder took a valid interest under the clause quoted.
It is argued on behalf of the defendants that the will gives the remainder in the negroes to Polly Ingram, and not to her heirs, in connection with the heirs of Jesse Deloach. No authority is referred to in support of this construction, nor can any, we presume, be found. The intention of the testator is too clear to admit of doubt that the remainder should go equally to the heirs of his son *426 and daughter named. Similar clauses have repeatedly come before the Courts, and particularly the Courts of North Carolina, and have always been so construed. Buellock v. Bullock, 2 Dev. Eq., 307; Ward v. Stowe, 2 Ib., 309; Seay v. Winston, 7 Hum., 472.
It was, also, urged in argument, that the bequest was not effective, inasmuch as it did not appear that either Jesse Deloach or Polly Ingram had any children at the date of the will; that an examination of the authorities would show, that whenever the word heirs was construed in such cases, to mean children, it would be found that there was a child in existence at the . date of the will to answer the description. No authority was cited to sustain the distinction suggested, nor do wre see, that either in principle or upon authority, the existence of children at the time of the execution of the will, is at all material, if there are persons to answer the description when the bequest is to take effect. Besides, even if the rule were as contended for, it would not alter the result. It might be conceded, that in order to construe the word “ heirs,” as meaning children, a child must be in existence when the will is made, yet the only effect would be, in the absence of such child, to construe the word heirs, as meaning heirs proper as to realty, and next of kin as to personalty; and then, if children were in existence when the bequest took effect, they would take as such heirs and next of kin. The word heirs, as was decided by this Court in Ward v. Saunders, 3 Sneed, 387-391, “is flexible, and may mean next of kin, or heir at law, according to the nature of the property given.” To the same effect are the North Carolina authorities. Simms *427 v. Garrot, 1 Dev. and Bat. Eq., 393; Bryant v. Scott, Ib., 156. These authorities also hold, that a bequest of slaves to A for life, with remainder to the lawful heirs of B, when it appears from the will that B is living, is tantamount to a bequest to the children of B; and is to be divided among those who shall be in esse at the death of the first taker. See also, Jourdan v. Greer, 2 Dev. Eq., 270. It appears from the will of Samuel Deloach, that both Jesse Deloach and Polly Ingram were then living, for specific bequésts are given to each. It is, also, now definitely settled in that State, after some conflict among the cases, that in a bequest, as in this cause, to the heirs of two persons, the persons answering the description when the bequest takes effect, take per capita, and not per stirpes. Bryant v. Scott, 1 Dev. and Bat. Eq., 156; Ward v. Stowe, 2 Dev. Eq., 509. These conclusions are in consonance’ with general rules of construction, and with our own cases.
There remains only one point to be disposed of. It is insisted, that the relief granted in this case can only extend to the complainants, and cannot include the defendants, the heirs of Jesse Deloach. We do not think so. It is the settled law of the Court of Chancery, that a decree may be made between co-defendants, grounded upon the pleadings and proof between the complainant and defendants, and founded upon, and connected with the subject matter in litigation between the complainant and one or more of the defendants; and it is the constant practice of the Court to make such decrees, to prevent multiplicity of suits. Chumley v. Dunsanay and others, 2 Sch. and Lef., 710; Elliott v. Pell, 1 Paige, *428 268; Gentry v. Gentry, 1 Sneed, 87. The fact that the defendants, on whose behalf the decree is sought, have been brought before the Court by publication, can make no difference. The mode in which parties are brought into Court, is regulated by the law of every country, and within the territorial jurisdiction of that country, the decree will be effectual. Whatever may be the extra-territorial effect of the decree, the parties who are actually, in the eye of the law, in Court, must have their rights acted upon. This is more particularly the case when, as in the present instance, the defendants are jointly interested with the complainants in personal property, the subject matter of the litigation. The original defendants very properly objected to the want of proper parties, because the heirs of Jesse Deloach were not before the Court, and they cannot now be heard to say that the rights of these parties, brought in at their own instance, shall not be acted upon.
It is suggested that the heirs of Jesse Deloach may have renounced their right under their grandfather’s will to these negroes, or may not now choose to claim them. If the renunciation referred to, had been made, the defendants in possession of the negroes, were at liberty to shew it, and would have had all the benefit, as upon a personal service of process upon the children of Jesse Deloach. If the said children decline to come forward and take any benefit under this decree, it will unquestionably inure to the benefit of their co-defendants. The complainants are only entitled with the children of Jesse Deloach, to an equal division per capita, of the negroes. If any child declines or fails to take his share, it will remain with the defendants now in possession. It ap *429 pears from the amended bill of the complainants, filed to bring the heirs of Jesse Deloach before the Court, that all of these heirs are probably not named. Under the construction put upon this will in the Chancellor’s decree, and in this opinion, it is not possible to ascertain the precise .interest of the complainants, without first ascertaining the number of the heirs of Jesse De-loach entitled to take at the death of the tenants for life. In this view, it will be necessary to modify the decree of the Chancellor, and remand the cause for further proceedings.
The children of Jesse Deloach and Polly Ingram, living at the death of the last surviving of the tenants for life, will take the slaves in dispute per capita. They will be entitled to a division of the slaves, if it can be made among them. If not, the parties would be entitled to a sale for division. Should the children of Jesse Deloach fail to come forward and claim their share of the negroes, and should a division of the negroes be impracticable, we think it would be proper and just to ascertain, by reference to the master, the interest of the complainants in the negroes held, by each of the defendants, and to allow such defendant to pay the same into Court, or - secure the same to be paid in such time as might be deemed reasonable, and to vest the defendants with a good title to the interests thus paid for. The defendants in possession of the slaves, must account for hire since the complainants’ rights accrued, upon the principles here laid down, ail proper allowances for taxes, medical bills, &c., being made them. The entire costs of the cause will be paid out of the hire as aforesaid, the appellants and their sureties, in the mean *430 time, paying the costs of this Court, for which they shall be allowed a credit in taking the account ordered. With these modifications, the decree of the Chancellor is affirmed.